IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01741-PAB-NYW

OVERHEAD SOLUTIONS, INC., d/b/a A1 Garage Doors, a Colorado corporation,

    Plaintiff,

v.

A1 GARAGE DOOR SERVICE, L.L.C., an Arizona limited liability company,

    Defendant.

## ORDER

This matter is before the Court on Plaintiff's Amended Motion for Partial Summary Judgment Based on Prior Use [Docket No. 55]. Plaintiff moved for summary judgment on its first, second, and third claims. Docket No. 55. Defendant responded, Docket No. 60, and plaintiff filed a reply. Docket No. 65. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This lawsuit arises out of a dispute around the trade name and trademark "A1 Garage Doors" (the "Mark") and whether plaintiff or defendant first used the Mark in commerce in the "Front Range" of Colorado, which the complaint describes as 50 miles east and west of the Interstate-25 corridor between Fort Collins to the north and Monument to the south. Docket No. 1 at 2, ¶ 12.

Shannon Dudnick and her then-husband Steven Lopez founded a garage door

---

[1] The following facts are undisputed unless otherwise indicated.

business that began operating in Colorado in early 2004.[2]  Docket No. 55 at 3, ¶¶ 1–2.  Around the same time, Ms. Dudnick launched a website for the business, "www.a1-doors.com."  *Id.*, ¶ 3.  This website displayed the company name as "A-1 Garage Door" for nearly six years before the website was redesigned and the company name and design were changed to "A-1 Garage Doors" in some places and "A1–Garage Doors" in others.  Docket No. 60 at 9–10, ¶¶ 29–30.[3]  The website was updated repeatedly over the years, and the business used names including "A1 Garage Doors," "A-1 Garage Doors," and "A1–Garage Doors."  *Id.* at 10–11, ¶¶ 31–34.[4]

Following divorce proceedings in 2008 between Ms. Dudnick and Mr. Lopez, a court awarded Ms. Dudnick sole control of the business.  Docket No. 55 at 3, ¶¶ 4, 6.[5]

---

[2] The parties dispute the name of this business and when precisely it began operating.  Plaintiff states that the business was established in September 2003 as "A1 Garage Doors" and that it began operating "under the Mark" in January 2004.  Docket No. 55 at 3, ¶¶ 1–2.  Defendant asserts that as of February 2004, the business was referred to as "A1 Garage Door Co."  Docket No. 60 at 5, ¶¶ 1–2.

[3] Plaintiff does not dispute these statements of fact in its reply brief.  Docket No. 65 at 3–4.  The statements are therefore deemed admitted.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vi.

[4] Plaintiff does not dispute these statements of fact in its reply brief.  Docket No. 65 at 3–4.  The statements are therefore deemed admitted.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vi.

[5] The parties dispute the name of the business and when Ms. Dudnick became sole owner.  While plaintiff states that she was awarded sole control of the business operated as "A1 Garage Doors" on September 22, 2009, *id.*, ¶ 6, defendant states that court documents refer to the business by different names and that Ms. Dudnick assumed management of "A-1 Garage Doors" on September 22, 2009 and sole ownership of SJ Lopez, Inc. ("SJ Lopez") d/b/a "A1 Garage Door Repair, Inc." in April 2010.  Docket No. 60 at 6, ¶ 6.

Ms. Dudnick then formed a new company in late 2013.  *Id.* at 4, ¶ 14.[6]  From 2004 until the present, there has been no interruption in the garage door business that Ms. Dudnick operated.  *Id.*, ¶ 15.[7]

Defendant owns two federal trademarks in the garage door industry, one for the mark "A1" and one for a design mark featuring "A1," each of which has a first use in commerce date of March 7, 2007.  *Id.* at 5–6, ¶¶ 23–24.  Defendant has been operating its garage door business in Colorado since at least 2018.  *Id.* at 5, ¶ 19.[8]  Plaintiff has experienced instances of customers confusing it and defendant.  *Id.*, ¶ 22.[9]

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the

---

[6] The parties dispute the name and date of formation of this company.  Plaintiff states that the company is "Overhead Solutions, Inc. d/b/a A1 Garage Doors," that it was founded on September 30, 2013, and that all of A1 Garage Door's assets and goodwill, including the rights to the Mark, were assigned to each successor.  *Id.* at ¶¶ 14–15.  Defendant states that the company was formed on October 17, 2013, was named "A-1 Garage Door Solutions, Inc," but that there is no evidence of a transfer to any successor entity.  Docket No. 60 at 7, ¶¶ 14–15.

[7] Although defendant purports to dispute whether there was an interruption in the operation of Ms. Dudnick's garage door business by stating that there is no evidence of "transfers" of SJ Lopez to a successor entity from 2009 to 2013, Docket No. 60 at 7, ¶ 15, defendant does not deny that there was no interruption of the garage door business that Ms. Dudnick operated.  Thus, that fact is deemed admitted.

[8] Defendant claims that it began using the Mark in Colorado as of at least 2009.  Docket No. 60 at 8, ¶ 19.

[9] While defendant disputes this statement and insists that there is no evidence of actual customer confusion, Docket No. 60 at 9, ¶ 22, plaintiff cites many examples of consumers complaining about plaintiff's service who were not in plaintiff's customer database, which defendant does not dispute.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Id.* at 839–40.

If the party moving for summary judgment bears the ultimate burden of persuasion at trial, it must "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). This "shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery." *Id.*

### III. ANALYSIS

Plaintiff seeks partial summary judgment on its first, second, and third claims on the grounds that plaintiff's first use of the Mark in commerce in the Front Range predated defendant's, thereby giving plaintiff priority.[10] Docket No. 55 at 1. For the

---

[10] It is not clear from plaintiff's motion whether it believes that the relevant date of defendant's first use is when defendant began to use the Mark in commerce in the

Court to grant plaintiff's motion, plaintiff must establish that there is no genuine dispute of material fact that plaintiff used the Mark in the Front Range before defendant either used the Mark in the Front Range or filed for federal registration of its marks, which the parties agree have a first use date of March 7, 2007.[11]  *Id.* at 5–6, ¶¶ 23–24.

Trademark rights are "determined by the date of the mark's first use in commerce," and "[t]he party who first uses a mark in commerce is said to have priority over other users."  *Hana Fin. v. Hana Bank*, 574 U.S. 418, 419 (2015).  "First use" in commerce occurs when a company uses its mark in a public and widespread manner, not merely when it registers its name, so as to create an association among consumers between the mark and its owner.  *See, e.g*, *Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 335 (1st Cir. 2004); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999); *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1266 (5th Cir. 1975).

It is possible for trademark users to "make certain modifications to their marks

---

Front Range or when defendant federally registered its "A1" mark.  *Compare* Docket No. 55 at 1 ("There is no genuine issue of material fact that Plaintiff began using A1 GARAGE DOORS (the "Mark") in commerce in Colorado before Defendant commenced use of the Mark.") *with id.* at 2 ("Plaintiff has continuously used the Mark in Colorado since January 2004, more than three (3) years before Defendant's date of 'first use', as stated in Defendant's trademark registrations.").  Whichever plaintiff intended, the Court's conclusion is the same.

[11] "The right to a trademark only extends to the area in which it is used."  *Okla. Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629, 633 (10th Cir. 1977).  Although the owner of a trademark may obtain constructive nationwide rights to the mark by obtaining a registration from the USPTO, *see* 15 U.S.C. § 1057(c), constructive registration rights do not extinguish common law rights to a trademark that have been established in a particular region before the application for the registration was filed with the USPTO.  *Id.*

over time without losing priority" through the doctrine of "tacking." *Hana Fin.*, 574 U.S. at 419–20.  Tacking is permitted in limited circumstances "when the original and revised marks are 'legal equivalents' in that they create the same, continuing commercial impression."  *Id.*  For two marks to be "legal equivalents," consumers must consider both marks to be "the same mark."  *Id.* at 422.  The Supreme Court has held that, "[b]ecause the tacking inquiry operates from the perspective of an ordinary purchaser or consumer" and is "fact-intensive," a jury should determine whether tacking is available in a given case.  *Id.* at 420–22.

Plaintiff contends that tacking is "properly resolved 'as a matter of law if reasonable minds cannot differ and the evidence permits only one conclusion.'"  Docket No. 65 at 6 (quoting *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1160 (9th Cir. 2013)).  As such, plaintiff asks the Court to find that there is no genuine dispute of material fact that plaintiff began using the Mark in commerce in the Front Range of Colorado before defendant.  Docket No. 55 at 1, 11.

It is true that tacking disputes are occasionally resolved as matters of law.  "If the facts warrant it, a judge may decide a tacking question on a motion for summary judgment or for judgment as a matter of law."  *Hana Fin.*, 574 U.S. at 423.  However, plaintiff here has not shown that "the facts warrant it."  The undisputed facts indicate that plaintiff's website referred to the business by a variety of names from 2004 to the present, *see, e.g.*, Docket No. 60 at 9–10, ¶¶ 29–30 (listing names including variations of "A-1 Garage Door," "A-1 Garage Doors," "A1–Garage Doors"), the undisputed facts do not establish that consumers had the "same, continuing commercial impression" that

6

one name identified the same company as the next name from 2004 to the present. *See Hana Fin.*, 574 U.S. at 420.

Plaintiff asks the Court to grant summary judgment based on "[t]he reasonable inference . . . that from 2004 to 2020, Ms. Dudnick has continuously operated a business called A1 Garage Doors in the Front Range of Colorado." Docket No 65 at 7. Plaintiff offers no undisputed facts from which a reasonable jury could drawn an inference that "Ms. Dudnick has continuously operated a business called A1 Garage Doors in the Front Range," which is not literally true given the undisputed variations in its business name, and which is not true based on the variations being "legal equivalents" since plaintiff offers no evidence, much less undisputed evidence, of how consumers viewed plaintiff's name variations. "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, there is a genuine dispute regarding whether consumers viewed plaintiff's varied business names as "the same mark," and thus whether consumers had a "continuing commercial impression" of the business that predated defendant's first use or federal registration. *Hana Fin.*, 574 U.S. at 420–22. The facts viewed in the light most favorable to defendant preclude plaintiff from establishing prior first use as a matter of law.

Because the Court has determined that there are genuine disputes of material fact, the Court need not reach the arguments about the alleged assignment or abandonment of the Mark or the issues raised in defendant's sur-reply.

7

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Amended Motion for Partial Summary Judgment Based on Prior Use [Docket No. 55] is **DENIED**.  It is further

**ORDERED** that plaintiff's Motion for Leave to File a Sur-Sur Reply [Docket No. 122] is **DENIED as moot**.


DATED February 3, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge