IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01741-PAB-NYW

OVERHEAD SOLUTIONS, INC., d/b/a A1 Garage Doors, a Colorado corporation,

    Plaintiff,

v.

A1 GARAGE DOOR SERVICE, L.L.C., an Arizona limited liability company,

    Defendant.

## ORDER

This matter is before the Court on defendant's Motion for Judicial Estoppel ("first motion") [Docket No. 74] and Second Motion for Judicial Estoppel ("second motion") [Docket No. 87]. Plaintiff filed a response [Docket No. 81] in opposition to defendant's first motion, to which defendant replied [Docket No. 86]. Plaintiff also filed a response [Docket No. 102] in opposition to defendant's second motion, to which defendant replied [Docket No. 112]. The Court has jurisdiction under 28 U.S.C. § 1332.

## I. BACKGROUND

This lawsuit arises out of a trademark infringement, "unfair competition, deceptive trade practices, and misappropriation of corporate identity" dispute over the use of "A1 Garage Doors" (the "Mark"). Docket No. 1 at 1, ¶ 4. The principal issue is whether plaintiff or defendant first used the Mark in commerce in the garage door industry in the "Front Range" region of Colorado, which the complaint describes as 50 miles east and west of the Interstate-25 corridor between Fort Collins to the north and

Monument to the south. *Id.* at 2, ¶ 12.

Plaintiff argues that it has used the Mark since 2004. *Id.* at 2, ¶ 12. Defendant owns two federal trademarks in the garage door industry, one for the mark "A1" and one for a design mark featuring "A1," each of which has a first use in commerce date of March 7, 2007. Docket No. 55 at 5–6, ¶¶ 23–24.[1] Plaintiff claims that defendant's marks infringe plaintiff's mark because defendant's marks imitate plaintiff's mark "in connection with the offering an advertising of Defendant's services" in the Front Range, which has caused customer confusion and harm to plaintiff. Docket No. 1 at 6, ¶¶ 47, 49–50.

Defendant alleges that plaintiff made two statements to the United States Patent and Trademark Office ("USPTO") and two statements to the United States Bankruptcy Court that, when compared to statements plaintiff made in this litigation, warrant judicial estoppel. Docket Nos. 74, 87.

## II. LEGAL STANDARD

The doctrine of judicial estoppel states that, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). While judicial estoppel is "probably not reducible to any general formulation of principle," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), the following factors are used in

---

[1] The parties' dispute is more fully described in the Court's order denying plaintiff's partial motion for summary judgment. Docket No. 172.

deciding when to apply the doctrine:

> First, a party's later position must be clearly inconsistent with its earlier position.  Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory.  Second, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . .  Third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*United States v. Villagrana-Flores*, 467 F.3d 1269, 1278–79 (10th Cir. 2006) (quoting *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (internal citations and quotation marks omitted)); *see also Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1209 (10th Cir. 2011).  "Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution."  *Alcohol Monitoring Sys., Inc. v. ActSoft, Inc.*, No. 07-cv-02261-PAB, 2011 WL 5075619, at *4 (D. Colo. Oct. 25, 2011) (quoting *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996), *aff'd*, 499 F. App'x 974 (Fed. Cir. 2013) (unpublished)).

## III. ANALYSIS

### A. First Motion for Judicial Estoppel

Defendant's first motion for judicial estoppel concerns two statements that plaintiff made to the USPTO.  Docket No. 74 at 4–5.  First, defendant states that plaintiff, "through its owner, Shannon Dudnick," represented, by checking a box on an April 30, 2019 application to register the Mark before the USPTO, that "no other persons, except, if applicable, concurrent users, have the right to use the mark in

commerce, either in the identical form or in such near resemblance as to be likely, when used or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."[2] *Id.* at 5 (citing Docket No. 74-2 at 3). The trademark examiner, however, did not accept plaintiff's arguments, but rather found that there was a likelihood of confusion between plaintiff's and defendant's marks. Docket No. 81 at 5 (citing Docket No. 81-1 at 3). The Final Office Action states that the trademark examiner refused registration "because of a likelihood of confusion with the mark in U.S. Registration No. 5245234." Docket No. 81-1 at 3. U.S. Registration No. 5245234 is defendant's "A1" mark. Docket No. 60 at 9, ¶ 24.

The second statement that defendant claims is inconsistent comes from an appeal of the Final Office Action. Docket No. 74 at 5 (citing Docket No. 74-3 at 2). Plaintiff explains that, once the trademark examiner refused the application and issued the Final Office Action, plaintiff was given six months to appeal the Final Office Action before the Trademark Trial and Appeal Board ("TTAB"). Docket No. 81 at 4–5. Defendant claims that plaintiff repeated the first inconsistent statement in the appeal before the TTAB by stating that "there is no likelihood of confusion [between plaintiff's and defendant's marks], . . . because the marks are different." Docket No. 74 at 5 (citing Docket No. 74-3 at 2).

Defendant believes that these two statements are inconsistent with plaintiff's

---

[2] Defendant claims that plaintiff's application stated, "no one has any rights to use the mark A1 GARAGE DOORS in commerce." Docket No. 74 at 4–5. This is a mischaracterization of the USPTO application's language and what plaintiff represented. Nowhere does the application state that "no one has any rights to use the mark."

statement before this Court that there is a likelihood of confusion with "Defendant's A1 protected Mark."  *Id.*  Defendant's motion identifies no specific statement in plaintiff's Court filings that is "clearly inconsistent."  *Villagrana-Flores*, 467 F.3d at 1278.  Because defendant does not identify the supposedly inconsistent statement that plaintiff made to the Court, defendant fails to establish the first factor of showing plaintiff's "later position [is] clearly inconsistent with its earlier position."  *Id.*  However, even if defendant had identified a specific instance where plaintiff stated that there is a likelihood of confusion between the marks,[3] the second judicial estoppel factor requires that "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled."  *Villagrana-Flores*, 467 F.3d at 1278.  The trademark examiner, however, did not accept plaintiff's argument that there was no likelihood of confusion between the mark that plaintiff applied to register and defendant's existing mark, and the TTAB appeal has been stayed pending resolution of a separate dispute between the parties.  Docket No. 81 at 5.  Defendant therefore has not shown that plaintiff "succeeded in persuading" the trademark examiner or the TTAB to accept plaintiff's earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled."  *Villagrana-Flores*, 467 F.3d at 1278.  Therefore, the Court finds that defendant is not entitled to judicial estoppel and denies defendant's first

---

[3] Plaintiff's complaint contains statements such as defendant's use of the Mark "has already caused, and will continue to cause, confusion, mistake or deception as to the source and origin of the services and company associated with the service mark." Docket No. 1 at 6, ¶ 49.

5

motion.

## B.  Second Motion for Judicial Estoppel

Defendant's second motion for judicial estoppel centers on two statements that Ms. Dudnick made in the course of her personal bankruptcy.[4]  Docket No. 87 at 1. First, defendant claims that Ms. Dudnick stated in the bankruptcy proceeding that she did not own any intellectual property, such as a trademark.  *Id.* at 7.  Defendant believes this to be inconsistent with plaintiff's claims in this litigation that plaintiff has owned the mark for many years.  *Id.* at 1.  Second, defendant claims that Ms. Dudnick stated in the 2010 bankruptcy proceeding that she owned the plaintiff company for one year, and that this is inconsistent with plaintiff's representations to the Court that Ms. Dudnick has owned the company for five years.  *Id.* at 8.[5]

As to the first allegedly inconsistent statement, plaintiff explains that, as part of Ms. Dudnick's divorce, she was awarded sole control of A1 Garage Doors.  Docket No. 102 at 2.  To facilitate "this new ownership structure, Ms. Dudnick assigned A1 Garage

---

[4] Defendant states that "Plaintiff's owner Shannon Dudnick and A1 Garage Doors had previously filed for Chapter 7 bankruptcy."  Docket No. 87 at 1.  However, defendant cites no evidence that plaintiff filed for bankruptcy.  Plaintiff, in response to defendant's second motion, which appended Ms. Dudnick's voluntary petition for bankruptcy, Docket No. 102-1 at 57, states that the debtor is an individual, as opposed to a corporation or partnership, and that the debts are primarily consumer debts, as opposed to primarily business debts.  *Id.*  Ms. Dudnick states that she sought to discharge certain personal debts related to the business because her ex-husband improperly used business credit cards that were tied to Ms. Dudnick's personal credit. Docket No. 102 at 2.

[5] Defendant also states that Ms. Dudnick allowed a tradename to lapse after registering it with the Colorado Secretary of State.  Docket No. 87 at 11.  Defendant does not, however, identify purportedly inconsistent statements that would warrant judicial estoppel.  Rather, defendant appears to provide this information as an "indicator" of plaintiff's "intention for the use of the name A1 Garage Doors."  *Id.*

Doors to a new corporate entity where she was the only shareholder." *Id.* Ms. Dudnick "never operated her business as a sole proprietorship, nor assigned, sold or otherwise transferred the business assets used to operate A1 Garage Doors to herself as an individual." *Id.* As such, when she filed personal bankruptcy, she "did not disclose ownership of any trademarks, service marks or other intellectual property because they were not her <u>personal</u> assets." *Id.* at 3. Plaintiff's trademarks and service marks have always belonged to the companies, not to Ms. Dudnick personally. *Id.* And because the bankruptcy was Ms. Dudnick's, not plaintiff's, plaintiff insists that there were no inconsistent statements.

The Court agrees with plaintiff. Defendant has not established that Ms. Dudnick's statements in her personal bankruptcy that she owned no intellectual property are "clearly inconsistent" with plaintiff's statements to the Court that it owns the Mark. The statements on which defendant bases its request for judicial estoppel were made by different parties, and the law is clear that judicial estoppel requires inconsistent statements by the same party. *See, e.g.*, *New Hampshire*, 532 U.S. at 749 ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding" (quoting 18 Moore's Fed. Prac. § 134.30, 134–62 (3d ed. 2000)); *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) (judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase"). Because defendant has not shown that plaintiff made clearly inconsistent statements, the Court finds judicial

estoppel is not warranted and the Court will not bar plaintiff from arguing that it owns the Mark.

The second statement that defendant believes warrants judicial estoppel fails for the same reason. Defendant argues that it was inconsistent for Ms. Dudnick to state in her 2010 bankruptcy that she has owned plaintiff for one year, Docket No. 87 at 8, but then claim in this litigation that Ms. Dudnick has "continuously operated a business under the trade name A1 Garage Doors" since 2004. *Id.* at 9 (citing Docket No. 1 at 6, ¶ 5). Defendant is incorrect. First, these statements were not made by the same party and, as such, judicial estoppel is not appropriate. *New Hampshire*, 532 U.S. at 749. Even if the same party had made both statements, however, they are not inconsistent. As plaintiff explains, Ms. Dudnick and her then-husband began operating the business in 2004. Docket No. 102 at 2. Ms. Dudnick was awarded sole control of the company as part of her divorce in September 2009. *Id.* She filed for bankruptcy in October 2010. *Id.* at 3. Therefore, when she filed for bankruptcy, she had personally owned the company for one year, even though she and her husband had operated it since 2004. *Id.* at 2–3. Because defendant has not shown that plaintiff's "later position [is] clearly inconsistent with its earlier position," *Villagrana-Flores*, 467 F.3d at 1278, the Court will not estop plaintiff from arguing that Ms. Dudnick has controlled plaintiff since 2004 and will deny defendant's second motion.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion for Judicial Estoppel [Docket No. 74] is **DENIED**. It is further

**ORDERED** that defendant's Second Motion for Judicial Estoppel [Docket No. 87] is **DENIED**.

DATED February 4, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

9